AYRES, Judge.
This is an action in tort wherein plaintiff seeks to recover damages for personal injuries, as well as damage to property, arising out of a fire and explosions at his wholesale gasoline and oil station in Bastrop, Louisiana, July 3, 1962. Made defendant in addition to Wheeling Pipeline, Inc., is its public liability insurer.
Negligence charged to the named defendant and its employee consists in delivering gasoline from its truck into plaintiff’s storage tanks with defective equipment and in permitting gasoline to escape without the exercise of reasonable precautions. The defendants deny responsibility on the part of Wheeling’s employee and charge, in the alternative, negligence, at least, contributing to the occurrence of the accident, on the part of plaintiff’s employee. These charges relate to the manner of the delivery of gasoline into a 55-gallon drum to a customer simultaneously with defendant’s delivery of gasoline to plaintiff’s storage tanks.
From a judgment in plaintiff’s favor, defendants appealed. By answer to the appeal, plaintiff seeks an increase in the awards.
Concerned on the appeal is, first, a question of liability and then, if this issue is re *409 solved adversely to defendants, a question of proper awards for the injuries and damages sustained.
The issue on the question of liability is factual in character. Prerequisite to its discussion is a résumé of the material facts.
Plaintiff, McDonald, owns and operates a wholesale gasoline and oil station, commonly referred to as a bulk plant. On the morning of the accident, one Jeff Mitchell drove a tractor, to which was attached a homemade trailer, to the plant for the purchase of 55 gallons of gasoline, to be delivered in a drum loaded on his trailer. After the tractor was parked at the station, a truck and trailer unit of the defendant Wheeling Pipeline, Inc., driven by its employee, B. S. Carter, arrived with a load of approximately 7,000 gallons of gasoline for delivery to McDonald. This unit was parked alongside that of Mitchell. Carter attached a delivery hose, two inches in diameter and ten feet in length, to the pump on the truck and extended the hose across the top of Mitchell’s tractor and attached the same to an intake valve of plaintiff’s underground storage tank.
Both Mitchell and Carter awaited the arrival of plaintiff or his employee. Near 8:00 a. m., James S. Brewster, McDonald’s employee, arrived at the plant. Soon thereafter, McDonald arrived. Brewster measured the gasoline supply in the truck tank, whereupon Carter started his motor and began pumping the gasoline into plaintiff’s storage tank. Connecting the tank on the truck to the pump was a 3-inch hose, and extending from the pump to plaintiff’s underground storage was a 2-inch hose. The record discloses that the 3-inch hose had been replaced with a new one the day before the accident. The 2-inch hose had been in use for a considerable and undetermined length of time. Its fixtures had, however, been replaced the day before.
While delivery of the gasoline was being made into plaintiff’s storage tanks, Brewster attached a hose from plaintiff’s pump to the drum located on Mitchell’s trailer and filled it with gasoline. When this task was completed, Mitchell succeeded, with some difficulty, in cranking and starting his tractor, after which he took his seat in preparation of leaving. His motor missed, backfired, and sputtered. Carter, continuing to unload the gasoline as Mitchell attempted to depart, lifted the hose above the tractor to permit Mitchell to pass underneath. When the hose was thus lifted, a spray of gasoline emitted from the 2-inch hose or from the coupling thereof. The gasoline became ignited, whereupon Carter threw the hose down and rushed around the truck to cut the motor off and, thus, to stop the pump. Whether emanating from a broken hose or from its disconnection with the pump, a full flow of gasoline covered the surrounding area, including the motor vehicles and side of the station office. Several explosions occurred, one of which blew Mitchell over the top of the station office, landing him on the roof, from which, enveloped in flames, he fell to the ground. Plaintiff, standing in his office door 22 feet away, was blown backward through the office into a rest room. The injuries and damages for which plaintiff seeks to be compensated were thus caused.
Whether the gasoline was ignited by sparks from defendants’ motor or from Mitchell’s tractor was not established. Such does not appear to be of any importance. That the gasoline came from defendant’s hose or hose connection was clearly established; the hose or coupling was defective or the coupling was improperly attached. The lifting of the hose above the tractor by defendant’s driver, together with the force of pressure inside the hose, caused the gasoline to spray and come in such close contact with defendant’s motor or Mitchell’s tractor as to ignite. The eruption of the hose or its uncoupling from the pump, on Carter’s dropping the hose, further evidences either a defective hose or a faulty coupling.
Proof of the aforesaid state of facts amply establishes the negligence of Carter in the want or lack of precautions that would *410 have been taken by a reasonable person and a prudent operator of the truck’s gasoline delivery equipment. The conclusion is, therefore, inescapable that either Wheeling Pipeline, Inc., was negligent in supplying a defective hose or faulty coupling, or that its employee was negligent in not properly connecting the hose to the pump on the truck.
Defendants’ plea of contributory negligence on the part of plaintiff’s employee is without merit. There is no proof that any leakage of gasoline from the delivery being made into Mitchell’s drum first caught fire or caused the explosions. The proof is, as heretofore observed, that the spray from defendant’s hose or hose connection was ignited and precipitated the explosions. Except for such negligence, the starting of Mitchell’s tractor, conceding the possibility of a spark therefrom igniting the gasoline, would not have precipitated the holocaust that followed.
The determination of an award to compensate for injuries accidentally sustained is generally attendant with some difficulties. In this regard, it may be observed that plaintiff was first seen by a specialist for the treatment of his ears. The testimony of this physician was not taken nor was any explanation made of this failure. Nevertheless, plaintiff was shown to have sustained burns on his hands and arms, extending to his elbows, and to his head and face. The explosions produced shock.
Three weeks following the accident, plaintiff sought the services of his family physician, Dr. W. V. Gamier, who examined and treated him. A diagnosis was made that plaintiff had suffered a postconcussional syndrome and had undergone some physical changes in his brain effecting a change of behavior and in his ability to concentrate. Plaintiff experienced severe headaches and was described as nervous and irritable, with a loss of appetite. While undergoing treatment from Dr. Gamier, plaintiff was hospitalized for a period of five days. Recovery from the concussion was described as indefinite and would possibly require a year or more.
Prior to this accident, plaintiff was in exceedingly good health and had experienced no illness other than nose bleeding on-two occasions, five and eleven years respectively, prior to the accident. Since-the accident, plaintiff has undergone additional nose bleeding and has suffered a loss-of hearing. These Dr. Gamier attributed to-the accident. Plaintiff’s ability to hear was-described as worsening. In addition, since-the accident, plaintiff has suffered nausea,, difficulty in swallowing, and stiffness of the-neck and lower back muscles. From our review of the record, we are unable to point out manifest error in the award made by the trial court.
From the award of special damages plaintiff prays for an increase. The defendants-contend that the award is excessive and' should be reduced. This special damage-consists of various and sundry items. Items-claimed for loss of business and for loss in-volume of gasoline sold are speculative and were not established to any degree of legal certainty; hence, they were properly disallowed.
Nor was the proof sufficient to support the item of $150.00 as wages for an extra employee to drive a rented vehicle. The proof offered was only an estimate.
Objections were made for an allowance for painting signs on three storage tanks.. This item was adequately established. A bid was made therefor identical in amount with the sum paid for the painting of the signs destroyed.
Too, plaintiff’s evaluation of the two station pumps destroyed appears reasonable — $100.00 each for pumps costing $550.-00 each.
The judgment appealed should be amended by reducing the award made therein by the sum of $150.00.
*411 Therefore, the judgment appealed is amended by reducing the award made therein to $8,052.92 and, as thus amended, is affirmed at defendants-appellants’ cost.
Amended and affirmed.